**J. William WRIGHT, Jr., Appellant (Respondent Below),**

v.

**Roberta WRIGHT, Appellee (Petitioner Below).**

**No. 1–384A80.**

Court of Appeals of Indiana, First District.

Dec. 20, 1984.

Rehearing Denied Jan. 23, 1985.

---

Stephen F. Burns, Burns & Clark, Indianapolis, Peter L. Obremskey, Parr, Richey, Obremskey & Morton, Lebanon, for appellant.

Franklin I. Miroff, Nancy L. Cross, Ancel, Miroff & Frank, Indianapolis, Allen F. Wharry, Martin, Wharry & Disler, Lebanon, for appellee.

ROBERTSON, Judge.

Appellant, J. William Wright, Jr. (husband) appeals the decision of the Boone Circuit Court regarding the custody, visitation, support and division of property in the dissolution of his marriage to appellee, Roberta Wright, (wife).

We affirm.

The parties were married on January 3, 1965 and a petition for dissolution was filed on July 7, 1982. At the time of the marriage, husband, having been married before, was forty-eight (48) years old while wife was twenty-two (22) years old and had never been married. The 18-year marriage produced three children, namely, Bruce, age 14, Lisa, age 13, and Andrew, age 10.

Husband brought into the marriage assets valued at over $600,000 dollars while the wife brought assets of only minimal value. At the time of the filing of the petition for dissolution, the net worth of the parties was found to be $974,243.00. The husband maintained his medical practice throughout the marriage while the wife remained unemployed in order to care for the home and children. The court found that as of the date of the final hearing, husband had an income potential between $135,000.00 and $195,000.00. The wife had an annual income as a nurse of $24,000.00.

Husband's first point of contention concerns the trial court's findings and conclusions regarding the custody of his three children. We first note that the decision of the trial court comes to us clothed with the presumption that a correct result was reached. *Wireman v. Wireman*, (1976) 168 Ind.App. 295, 343 N.E.2d 292. The decision of the trial court may be reversed only on a showing of an abuse of discretion, not on the basis of conflicting evidence. *In Re Marriage of Julien*, (1979) Ind.App., 397 N.E.2d 651. In awarding custody of the children upon the dissolution of marriage, the crucial consideration for the trial court is the best interest of the children, not the desires or claims of the parents, natural or adoptive. *Schwartz v. Schwartz*, (1976) 170 Ind.App. 241, 351 N.E.2d 900.

Husband argues that the trial court erred in splitting the custody of the children. Husband was given custody of Bruce while Lisa and Andrew were placed in their mother's custody. IND.CODE 31–1–11.5–21 clearly vests the court with the discretion to structure any custody arrangement that it determines to be in the "best interest" of the child. The husband has cited no contrary authority to the court's ability to split custody of the children. Consequently, any challenge to the court's authority in this regard is waived. *Loeb v. Loeb*, (1973) 261 Ind. 193, 301 N.E.2d 349.

Husband argues that the wife is guilty of abuse and neglect of the children and interferred with his visitation rights. The evidence with respect to interference with visitation and so called neglect was conflicting. As stated in *In Re the Marriage of Julien, supra* at 653, where the court is faced with contradictory evidence,

"we cannot and will not reverse the decision on the basis of conflicting evidence."

■ Lastly, husband argues that the children had a constitutional right to an in camera interview with the judge. Again, no authority is cited for this proposition and it is therefore waived. *Loeb v. Loeb, supra.*

■ There was no evidence or indication from the record that gender was a factor in the court's custody determination. There was direct evidence from the wife and Dr. Mary Ferree, an adolescent psychiatrist, that it was in the best interests of Lisa and Andrew to remain in the custody and care of the mother. Consequently, there was evidence supporting the trial court's decision. In light of our standard of review, we see no reason to overturn the judgment of the trial court regarding custody of the children.

■ Next, husband argues that the trial court erred in regard to the amount of child support awarded. The child support section of the dissolution statute I.C. 31–1–11.-5–12 provides in relevant part as follows:

> In an action pursuant to 3(a) or (b) [subsections (a) and (b) of 31–1–11.5–3], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:
> (1) the financial resources of the custodial parent;
> (2) the standard of living the child would have enjoyed had the marriage not been dissolved;
> (3) the physical or mental condition of the child and his educational needs; and
> (4) the financial resources and needs of the noncustodial parent.

The determination of proper child support is relegated to the sound discretion of the trial court, only to be overturned if it is against the clear logic and effect of the circumstances. *See, In Re Marriage of Osborne,* (1977) 174 Ind.App. 599, 369 N.E.2d 653.

■ Husband asserts that the increase in child support from the *pendente lite* order of $92.50 per week per child to $125.00 per week per child was illogical and contrary to the evidence. However, the *pendente lite* order not only required husband to pay $92.50 per week in child support, but also all taxes, insurance, utilities, telephone and maintenance expenses as well as necessary maintenance on her car. This order was terminated by the final decree and husband's expenses decreased and wife's increased correspondingly. Consequently, in light of these facts, the trial court's decision is not unreasonable.

There was evidence that wife's monthly expenditures for maintaining the household were approximately $4,000.00 and that she had a net monthly income of approximately $1500.00. Additionally, the evidence showed that husband had an income of between $134,000 and $150,000 per year.

■ Given this evidence and the parties' respective incomes as well as the manner in which the parties lived prior to the divorce, it was entirely within the discretion of the trial court to enter a child support order of $125.00 per week and to require husband to assume responsibility for the medical and educational expenses of the children.

■ Next, the husband contests the trial court's judgment with respect to the property division. In reviewing a division of marital property, this court presumes that the trial court followed the law and that it considered the statutory factors in making its decision. *See, Taylor v. Taylor,* (1981) Ind.App., 420 N.E.2d 1319, 1323. Indiana law with respect to property division reads in relevant part as follows:

> 31–1–11.5–11. *Disposition of Property* (a). In an action pursuant to Section 3(a) [31–1–11.5–3(a)] of this Chapter, the Court shall divide the property of the parties, *whether owned by either spouse prior to the marriage,* acquired by either spouse in his or her right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts, in a just and reasonable

manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the Court may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable, the Court shall consider the following factors:

(1) The contribution of each spouse to the acquisition of the property, including the contribution of the spouse as homemaker;

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desireability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

■ Husband maintains that he brought assets over $600,000 into the marriage, while the wife brought only minimal assets, and that this fact should be given increased consideration in determining the ultimate property distribution. While it is true that the trial court must consider the husband's contribution of prior acquired property, that is but one factor for review and is entitled to no special weight. *See, In Re the Marriage of Patus*, (1978) 175 Ind.App. 459, 372 N.E.2d 493.

■ The substantial contribution by one spouse under one subparagraph may be largely offset by that of the other spouse under a different subparagraph. *In Re Marriage of Osborne, supra.* In

reviewing a property division we must determine whether the result reached is clearly against the logic and effect of the facts and circumstances before the court. A "just and reasonable" division of assets upon marriage dissolution does not necessarily mean equal or relatively equal. *In Re Marriage of Osborne, supra.*

Although husband had brought assets worth over $600,000 into the marriage, there is evidence showing that it had either been expended· in maintaining the parties' lifestyle or had changed form during the course of the marriage. The net marital estate itself had grown to over $970,000.

■ In addition to the prior acquired property, the court also considered the duration of the marriage and the wife's substantial contributions in maintaining the home and caring for the children. Also, there is evidence showing that the wife entertained husband's associates and performed volunteer work as well. The wife's contributions coupled with the disparity in income and earning ability, clearly create a rational basis for the award of 42.7% of the marital estate to the wife.

Husband was awarded net assets of $714,746 and ordered to pay wife a cash settlement of $159,373 over a period of five years. At the time of the divorce, husband was drawing an annual income of between $134,000 to $150,000 and had an earning capacity combined with investments, in excess of $190,000. Given the fact that the settlement extended payments over a period of five years, coupled with the husband's income, he has received a net value of 57.3% of the estate.

While the evidence may arguably support the receipt of a greater or lesser percentage to each party, we cannot substitute our opinion for that of the trial court. Husband is requesting us to reweigh the evidence and this we cannot do. *In Re Marriage of Julien, supra.*

Husband goes on to argue that it was error for the trial court to distribute to him his pension and profit sharing plan without taking into consideration the tax conse-

quences thereof. Finding No. 34 states that the court specifically considered the potential tax liability and determined that it was "speculative" and thus incapable of valuation.

Here, the husband was ordered to pay wife $159,373.00 to be paid in installments of $39,373.00 the first year and $24,000.00 per year in the five succeeding years. The evidence before the court was that the parties had a net marital estate in excess of $970,000 over $300,000 of which was in stocks and bonds which were awarded to the husband in the final decree. Husband received over $700,000.00 in assets pursuant to the decree and the court found him to have an annual income ranging from $135,000 to $195,000 per year.

While husband may or may not have "cashed in" his pension plan, the court did not require him to do so by the terms of the decree. In addition, husband was clearly awarded sufficient assets with which to raise the first installment without invading his pension. Whether husband decides to cash in his pension and incur tax liability is purely a matter of choice. Since it is entirely reasonable that husband may not do so, the trial court was correct in considering the tax liability "too speculative" for valuation.

The decision is consistent with the reasoning in *Burkhart v. Burkhart*, (1976) 169 Ind.App. 588, 349 N.E.2d 707, 711 where we held that:

> [W]here there is no requirement that the shares actually be transferred (stock) and where the decree can be satisfied without such a mandatory transfer, there is no assurance that any such capital gains tax will ever have to be paid, and the inclusion of such a speculative obligation in the debts assumed by the husband is not proper.

Husband additionally questions the trial court's valuation of the marital residence and claims that a mathematical error was made in the valuation of his net award. In essence, husband is asking us to reweigh the evidence. As we have previously stated, conflicting evidence is simply in-

sufficient reason for reversal. Only if the judgment is clearly against the logic and effect of the facts and circumstances or the reasonable probable, and actual deductions to be drawn therefrom can we find an abuse of discretion. *Burkhart v. Burkhart, supra.*

In light of this standard of review and the surrounding circumstances of this case, we find no error sufficient to warrant reversal of the award on this case. The trial court's determination reflects a rational and logical distribution of the marital assets.

Judgment affirmed.

NEAL, P.J., and RATLIFF, J., concur.